IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER ANDERSON, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0380-MU |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>performing the duties and functions not<br>reserved to the Commissioner of<br>Social Security,[1] | :<br><br>:<br><br>: | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Anderson brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 14 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 16 (order of reference)). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the May 9, 2018 hearing before the

---

[1] *See* https://www.ssa.gov/agency/commissioner.html (last visited, April 17, 2018, 8:53 a.m.)

undersigned, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

## I. Procedural Background

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 24, 2014, alleging disability beginning on April 6, 2014. (*See* Tr. 148-55.) Anderson's claims were initially denied on June 24, 2014 (Tr. 92-101) and, following Plaintiff's August 12, 2014 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 104-05), a hearing was conducted before an ALJ on November 16, 2015 (Tr. 44-63). On August 29, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 22-38.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Anderson retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 37 *with* Tr. 60-61). On October 11, 2016, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 145); the Appeals Council denied Anderson's request for review on July 26, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 14 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to affective disorder, personality disorder, obesity, diabetes mellitus, back and hip pain, and right-sided weakness. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3. The claimant has the following severe impairments: affective disorder, personality disorder, obesity, and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can have no exposure to unprotected heights/hazardous machinery; can perform no commercial driving; can have occasional exposure to chemicals, fumes, odors, and gases; is limited to simple routine tasks; and can have occasional interaction with the public.**
>
> . . .
>
> **6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**
>
> . . .
>
> **7. The claimant was born on June 8, 1970, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**
>
> **8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.   .   .

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 24, 28, 29, 36 & 37 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light jobs identified by the VE during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the

[Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Anderson asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ committed reversible error in failing to find her back and hip pain and right-sided weakness to be severe impairments; and (2) the ALJ committed reversible error in failing to assign controlling weight to the opinions of her treating physician, Dr. Juanita Lopez.

**A.     Whether the ALJ Committed Reversible Error in Failing to Find Plaintiff's Back and Hip Pain and Right-Sided Weakness to be Severe Impairments.**  In her brief, Plaintiff points to evidence in the administrative record regarding her back and hip pain and right-sided weakness (*see* Doc. 9, at 3-5) and contends that the ALJ erred to reversal in failing to find that these impairments were severe impairments (*see id.* at 2-3 & 6). And, looking at the ALJ's decision, there can be little question but that the ALJ specifically determined that Plaintiff's back and hip pain

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

and her right-sided weakness were non-severe impairments. (*See* Tr. 24-28 (specifically finding "no medically determinable impairment related to any musculoskeletal condition, including the back or hip[]" and also noting that while Anderson may have had some mild right-sided weakness in June of 2014, which even her treating doctor identified as "subjective," the "objective treatment record failed to document the claimant's ongoing difficulty with weakness and reduced strength.")). Thus, the question for this Court becomes whether the ALJ reversibly erred in failing to find these identified impairments to be severe impairments.

A severe impairment is an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner's regulations define basic work activities as the abilities and aptitudes to do most jobs and in analyzing step two of the sequential evaluation process, the Commissioner considers a claimant's "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b). "Step two is a threshold inquiry." *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986). Only claims based on the most trivial impairments may be rejected, and an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work. *Id.* A claimant need only demonstrate that her impairment is not so slight and its effect not so minimal. *Id.*

In this case, the ALJ concluded that Anderson's back and hip pain and right-sided weakness were non-severe (Tr. 24-28). Plaintiff argues that substantial evidence does not support the ALJ's step two finding in this regard (*see* Doc. 9, at 3-5). However, even if the Court agreed with Plaintiff on this point, the law in this Circuit dictates that she would not be entitled to a remand of this action. When the ALJ finds at least one severe impairment, *see Tuggerson-Brown v. Commissioner of Social Security,* 572 Fed.Appx. 949, 951 (11th Cir. Jul. 24, 2014) ("[W]e have recognized that step two requires only a finding of 'at least one' severe impairment to continue to the later steps."),[5] and then gives full consideration to the consequences of all of the claimant's impairments, in combination, on her ability to work at later stages of the analysis,[6] *see, e.g., Tuggerson-Brown,* 572 Fed.Appx. at 951 (recognizing that the ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation [process]."), any error at step

---

[5] The ALJ did that in this case. (*See* Tr. 24 ("**The claimant has the following severe impairments: affective disorder, personality disorder, obesity, and diabetes mellitus**[.]")).

[6] "At steps three, four, and five, the ALJ considers the claimant's entire medical condition, including impairments that are not severe at step two." *Delia v. Commissioner of Social Security,* 433 Fed.Appx. 885, 887 (11th Cir. Jul. 14, 2011)*,* citing *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987); *see also Tuggerson-Brown, supra,* 572 Fed.Appx. at 951 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation [process]."); *Sanchez v. Commissioner of Social Security,* 507 Fed.Appx. 855, 858 (11th Cir. Feb. 8, 2013) ("Before reaching step four [and step five], the ALJ must assess the claimant's RFC—which is the most work the claimant can do despite her physical and mental limitations—by considering all of the relevant medical and medically determinable impairments, including any such impairments that are not 'severe.' In assessing the RFC, the ALJ must consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work." (citations omitted; emphasis supplied)).

two is harmless and is not cause for reversal, *see, e.g., Hearn v. Commissioner, Social Security Admin.,* 619 Fed.Appx. 892, 895 (11th Cir. Jul. 31, 2015) (finding any step two error harmless where the ALJ "properly noted that he considered [the claimant's] impairments in the later steps [of the sequential evaluation process]."); *Gray v. Commissioner of Social Security,* 550 Fed.Appx. 850, 853-54 (11th Cir. Dec. 30, 2013) ("Here, we need not consider whether substantial evidence supports the ALJ's conclusion at step two—that Gray's cervical spine impairment was not a severe impairment—because even if there was error, it would be harmless. In assessing Gray's RFC, the ALJ found that Gray had severe impairments and that the step two test was satisfied, and then specifically considered and discussed the symptoms that Gray alleged stemmed from a cervical spine impairment elsewhere in the five-step sequential process. . . . The ALJ thus performed the analysis that would have been required had he determined a cervical spine impairment was severe at step two.").

Stated somewhat differently, this Court need not consider whether substantial evidence supports the ALJ's step two decision—that Anderson's back and hip pain and right-sided weakness are not severe impairments—because any error in this regard is harmless given the ALJ identified severe impairments and proceeded to the remaining steps in the sequential evaluation process, giving full consideration to the consequences of all of Plaintiff's impairments (both severe and non-severe) on her ability to work at later stages of the analysis.[7] Although by no means the entirety of the

---

[7] The ALJ also specifically evaluated whether Anderson had an impairment or combination of impairments that met a listed impairment (*see* Tr. 28), which is a sufficient enough statement "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown, supra,* 572 Fed.Appx. at 952, citing *Wilson v. Barnhart,* 284 F.3d 1219, 1224-25 (11th Cir. 2002).

ALJ's later-stage analysis, the following language demonstrates that the ALJ considered all of Anderson's impairments—even those not specifically found to be severe—in reaching both the remaining steps of the sequential evaluation process (that is, steps 3-5) and the ultimate conclusion that Plaintiff is not disabled:

> Medical expert Ari B. Magill, M.D., a neurologist, completed a medical interrogatory in which he cited the claimant's lower back pain with decreased range of motion in the lumbosacral spine according to physical therapy notations and right hip pain with painful range of motion of the extremities. Dr. Magill opined that no impairment established by the medical evidence, either combined or separately, met or equaled any impairment described in the Listing of Impairments.
>
> . . .
>
> Dr. Magill completed a medical source statement of ability to do work-related activities (physical), in which he concluded that the claimant could continuously lift and/or carry up to twenty pounds . . . . In comments, Dr. Magill cited the claimant's back and hip pain, with physical therapy assessment showing reduced range of motion of the lumbosacral spine. Dr. Magill further opined that the claimant could sit, stand, and walk for eight hours at one time and over the course of an eight-hour workday. According to Dr. Magill, the claimant could continuously reach, handle, finger, feel, and push/pull with both hands and could continuously operate foot controls bilaterally. Dr. Magill also indicated that the claimant could frequently climb, stoop, kneel, crouch, and crawl and could continuously balance.

(Tr. 32; *see also* Tr. 31 (ALJ's discussion of Anderson's right-sided weakness within the context of her RFC assessment); Tr. 35-36 (ALJ's consideration of Anderson's symptoms in determining her RFC)). In short, therefore, this Court finds no reversible error with respect to Anderson's first assignment of error because the record demonstrates that the ALJ properly considered all of Anderson's impairments, including those she found to be non-severe (that is, her hip and back pain and her right-sided weakness), in reaching the conclusion that Plaintiff was not disabled. *See, e.g., Tuggerson-Brown, supra,* 572 Fed.Appx. at 952.

10

**B. Whether the ALJ Erred in Failing to Assign Controlling Weight to the Medical Opinions/Statements of Plaintiff's Treating Physician, Dr. Juanita Lopez.**

Plaintiff's only other assignment of error is that the ALJ failed to give controlling weight to the opinions/statements of her treating physician, Dr. Juanita Lopez. (Doc. 9, at 6-7.) Anderson describes Dr. Lopez' November 20, 2015 letter opinions/statements in the following manner: "Dr. Lopez stated that Plaintiff's clinical course is labile and guarded at best, due to her multi-system organ affliction. [] Dr. Lopez then concluded that the Plaintiff has poor ability for functional productivity." (Doc. 9, at 5, citing Tr. 426[8].)

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In particular, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 591 (11th Cir. May 2, 2006) (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those

---

[8] Dr. Lopez' November 20, 2015 letter opinion precisely reads, as follows: "Due to the multi-system organ affliction, her clinical course is labile & guarded at best. All things considered, Ms. Anderson is deemed disabled & incapacitated, w/poor ability for functional productivity." (Tr. 426.)

reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

The ALJ discussed Dr. Lopez' letter opinion(s) at significant length in the administrative decision. (Tr. 30-32.)

> On November 20, 2015, treating source Juanita Lopez, M.D., completed a narrative in which she cited seizure disorder; vascular headaches; history of transient cerebrovascular ischemic episodes with residual left hemiparesis; thyroid disorder; diabetes mellitus; and lumbar disc disease with radiculopathy. Dr. Lopez noted that the claimant had been through various modalities of treatment and care as she continued to take numerous medications and undergo physical therapy. Dr. Lopez opined that, due to the claimant's multi-system organ affliction, her clinical course was labile and guarded at best. Dr. Lopez further concluded that the claimant was disabled and incapacitated with a poor ability for functional productivity.
>
> The undersigned emphasizes that notations with Dr. Lopez referenced treatment or laboratory workup from April 2014 through September 2015, with decreasing frequency of treatment noted over time. Regarding the claimant's migraine headache[s], notations revealed that she was prescribed Esgic-Plus, Fioricet, and Lorazepam and, while notations from early June 2014 referenced daily right-sided headaches, subsequent notations failed to reference ongoing issues with migraine headaches. According to Dr. Lopez's notations, the claimant's diabetes mellitus was treated with Glucophage, Glipizide, and Invokana (briefly) and was considered to be uncontrolled on only two occasions. The claimant was given an appointment for a diabetes education class, and the undersigned notes that no end-organ damage as a result of diabetes mellitus was referenced in Dr. Lopez's notations. According to notations with Dr. Lopez, the claimant's seizure disorder was documented to be controlled on medications. Further, Dr. Lopez's notations referenced her assessment of cerebrovascular accident vs. conversion reaction, with examination disclosing *mild* weakness of the right arm and leg in April 2014 and *mild* right hemiparesis noted in April and June 2014. At a visit in May 2014, the claimant was found to have right upper extremity motor strength of 1/5 proximal and distal strength. The claimant's right lower extremity proximal and distal strength was 1/5; however, Dr. Lopez also noted that she was able to lift her right leg without difficulty during other parts of testing. Although the claimant was noted to ambulate with a walker at a particular

visit, Dr. Lopez described the claimant's *mild* right-sided weakness as "subjective".

Notations from June 4, 2014, disclosed that the claimant's right-sided weakness was getting better. The undersigned finds that subsequent treatment notes from Dr. Lopez failed to document ongoing complaints or objective findings of weakness and that there was no evidence of residual left hemiparesis documented. In other words, notations referenced various inconsistencies in strength testing. As previously set forth, notations of record failed to document the existence of a medically determinable musculoskeletal impairment for the claimant. Physical examination was primarily normal, with negative imaging, and the claimant was prescribed anti-inflammatory medications and muscle relaxers for symptoms. While Dr. Lopez referenced the claimant's thyroid condition in her narrative, her treatment notations made a singular reference to thyroid symptomatology, with swelling noted around the thyroid area. As set forth, the undersigned finds that treatment notations of Dr. Lopez have failed to entirely support the assertions stated in her narrative. **There is little evidence to support Dr. Lopez' reports of multi-system organ affliction, and the undersigned specifically finds no indication from her treatment notations that her clinical course was labile and guarded at best.** The undersigned additionally cannot ignore that subsequent notations regarding the claimant's extremity strength with USA Department of Neurology indicated that her arm and leg were stable since her original episode. The claimant's gait was found to be normal and her strength was observed to be 4+/5 in the right upper and right lower extremities. Treatment notations of record from August 2015 disclosed that the claimant moved all extremities well and ambulated without difficulty. The undersigned emphasizes that the objective treatment record failed to document ongoing difficulty with weakness and reduced strength. **Dr. Lopez's treatment notes, as well as the remainder of the objective record, failed to support a conclusion that the claimant was incapacitated with a poor ability for functional productivity.**

Further, the undersigned emphasizes that Social Security Rulings 96-2p and 96-5p indicate that a physician's opinion on issues reserved to the Commissioner of Social Security is never entitled to controlling weight or special significance. Examples of opinions that may not be given controlling weight are opinions about what an individual's residual functional capacity is and whether an individual is disabled. **Since Dr. Lopez's opinion that the claimant was disabled concerns an issue reserved to the Commissioner, it cannot be given controlling weight**. Based on the foregoing, the undersigned grants only partial weight to Dr. Lopez, accepting conclusions to the extent that such conclusions were consistent with the residual functional capacity statement herein. Although her treatment notations arguably documented some degree of limitation,

> Dr. Lopez's notations failed to support a finding that the claimant experienced totally debilitating functional limitations.

(*Id.* (emphasis supplied)).

Initially, the undersigned notes that the determination of disability is reserved for the Commissioner and because Dr. Lopez's statement that Plaintiff is "deemed disabled" is not a medical opinion, the ALJ is absolutely correct that this statement is not entitled to be given any weight, much less controlling weight. *Compare Kelly v. Commissioner of Social Sec.,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Symonds v. Astrue,* 448 Fed.Appx. 10, 13 (11th Cir. Oct. 31, 2011) ("[T]he ultimate issue of disability is left to the determination of the Commissioner; and a statement by a medical source that a claimant is 'disabled' or 'unable to work' is not binding on the ALJ.").[9]

In addition to rejecting Dr. Lopez's opinion that Plaintiff was "disabled," the ALJ also refused to accord controlling weight to Dr. Lopez's statement that Plaintiff's "clinical course is labile & guarded at best" (*see* Tr. 426) and her conclusion that Anderson is "incapacitated, w/poor ability for functional productivity[]" (*id.*), finding the statement inconsistent with the treating physician's own clinical records (Tr. 31) and her conclusion inconsistent with both her own clinical records and the remaining objective

---

[9] Plaintiff makes no argument to the contrary in her brief (*see* Doc. 9, at 5 (only making mention of Dr. Lopez's statement that Plaintiff's clinical course is labile and guarded at best, due to her multi-system organ affliction and to the treating physician's conclusion that Plaintiff has poor ability for functional productivity)), nor did Plaintiff's counsel make a contrary argument during the hearing on May 9, 2018.

treatment evidence of record (*see id.*). The Court concludes that the foregoing reasons articulated by the ALJ are valid reasons for failing to give Dr. Lopez's opinions controlling weight, *compare Gilabert, supra,* 396 Fed.Appx. at 655 (recognizing that good cause for rejecting a treating physician's opinion include that the opinion is inconsistent with the doctor's own medical records and that the opinion is not bolstered by the evidence) *with Jones v. Colvin,* 2013 WL 1909485, *3 (N.D. Ala. May 6, 2013) (recognizing as a valid reason for failing to give a treating physician's opinion controlling weight the fact that the opinion is inconsistent with the treating physician's own treatment records), and are reasons that are supported by the record. Indeed, as articulated by the ALJ (*see* Tr. 31), Dr. Lopez's own treatment records reflect that though, at times, Anderson's diabetes mellitus was uncontrolled it was otherwise without complication (*compare* Tr. 373 *with* Tr. 380); any thyroid concerns were exhibited only once and presented no long-term issues (*see* Tr. 392; *compare id. with* Tr. 373-90 (no additional mention of thyroid problems)); her vascular/migraine headaches were present but there is no indication that they were either constant or debilitating (*see, e.g.,* Tr. 238-39, 317-24, & 373-403); her history of transient cerebrovascular episodes with residual left hemiparesis was just that, a past history, with evidence of only mild right-sided weakness (*see* Tr. 238, 317, 320-23, 380, 384, 386, 389 & 396); her seizure disorder was under control before Dr. Lopez penned her November 20, 2015 letter (*see, e.g.,* Tr. 380; *compare id. with* Tr. 426); and though Dr. Lopez referenced lumbar disc disease with radiculopathy in her November 20, 2015 letter, and her office notes do reference back and hip pain (Tr. 373, 384, 386, 396 & 401), those same office notes also consistently reference that Anderson was in no acute

15

distress on examination and/or that her x-rays were negative (*see* Tr. 373 (noting negative x-rays); Tr. 380, 384, 386, 389 & 396 (noting no acute distress)). Based on the foregoing evidence, therefore, the Court finds that the ALJ did not reversibly err in failing to accord controlling weight to Dr. Lopez's statement that Plaintiff's "clinical course is labile & guarded at best."[10]

Additionally, the evidence just set forth from the records of Dr. Lopez, along with evidence from June of 2014 indicating a normal gait and station and 4+/5 strength in the right upper and lower extremity (Tr. 327), normal testing of the brain/head and extremities from April of 2014 through August of 2015 (*see, e.g.,* Tr. 273 (normal EEG awake and asleep on April 7, 2014); Tr. 274 (normal nerve conduction study of both lower extremities on April 7, 2014); Tr. 298 (normal MRI of the brain); Tr. 350 (normal unenhanced MR of the brain on July 24, 2015); Tr. 371 (normal unenhanced CT of the head on August 28, 2015)), and evidence from August of 2015 indicating that Plaintiff had no peripheral edema, moved all extremities well and ambulated without difficulty, though complaining of right big toe pain (Tr. 363-366), certainly constitutes substantial evidence supporting the ALJ's decision to not accord controlling weight to Dr. Lopez's "conclusion" that Anderson, as of November of 2015, was "incapacitated[] w/poor ability for functional productivity."

The Court therefore finds that good cause existed for the ALJ to not accord controlling weight to the various statements/opinions/conclusions of Dr. Lopez. *See*

---

[10] Interestingly, no examination accompanied Dr. Lopez's November 20, 2015 opinion letter (*see* Tr. 426) and, indeed, the closest examination to that letter occurred on September 22, 2015, almost two months earlier, an examination that reflects uncontrolled diabetes mellitus but otherwise does not contain clinical findings suggestive of an individual encumbered by disabling limitations (*see* Tr. 373-74).

*Hunter v. Social Sec. Admin., Commissioner,* 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."), *cert. denied,* 136 S.Ct. 2487, 195 L.Ed.2d 823 (2016).

Given that Anderson's assignments of error are properly overruled and Plaintiff does not otherwise directly challenge the ALJ's residual functional capacity assessment or the VE's identification of light jobs an individual with such residual functional capacity can perform (*compare* Doc. 9 *with* Tr. 29, 37 & 60-61), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)). In short, substantial evidence supports the ALJ's determination that Anderson was not disabled.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying

Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 15th day of May, 2018.

<u>s/P. BRADLEY MURRAY</u>
**UNITED STATES MAGISTRATE JUDGE**